# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DENNIS EUGENE SMITH,<br><br>    Defendant. | 8:22CR117<br><br>FINDINGS AND RECOMMENDATION REGARDING MOTION TO SUPPRESS STATEMENTS |

This matter comes before the Court on the Motion to Suppress Statements (Filing No. 55) filed by Defendant, Dennis Eugene Smith. Defendant seeks a court order suppressing statements he made during an interview with law enforcement on July 22, 2021, at the Pottawattamie County Jail. Defendant filed a brief (Filing No. 56) in support of the motion and the government filed a brief in opposition (Filing No. 57).

The Court held a pre-hearing status conference with counsel on September 12, 2023, and held an evidentiary hearing on the motion on October 11, 2023. Defendant was present at the evidentiary hearing proceedings with his attorney, Joseph E. Kuehl. The government was represented by Assistant United States Attorney, Kelli L. Ceraolo. The Court received into evidence, without objection, the government's Exhibit 1, which is the audio recording of the police interview of Defendant at issue. Omaha Police Department (OPD) Detective Juan Jiminez (Detective Jiminez) testified at the hearing. A transcript (TR.) of the hearing was prepared and filed on October 17, 2023. (Filing No. 67). The matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge recommends that the motion be denied.

## BACKGROUND

Detective Jiminez, a police officer for over nine years, is currently assigned to the Special Victims Unit, which entails investigations into crimes against a child. On July 22, 2021, at 3:00 p.m., Detective Jiminez and Detective Meza interviewed Defendant at the Pottawattamie County Jail following his arrest on a sexual assault of a child charge the previous night. (TR. 5-6). Detective Jiminez testified the interview took place inside a small room with a table and chairs. Defendant was not restrained or handcuffed, and the detectives were not armed and were wearing plainclothes. Defendant sat at the table closest to the door and the detectives sat across from them.

Before commencing the interview, Detective Meza stated he was a police officer and provided Defendant with a complete rights advisory pursuant to *Miranda*, asking Defendant if he understood each right after being advised of it; Defendant replied, "yeah," after each one. Defendant also replied, "yeah" when Detective Meza asked Defendant if he wanted to talk to him knowing his rights, although the detectives did not have Defendant sign a *Miranda* waiver form. (Ex. 1 at 1:07-1:41; TR. 7-8, 11).

Detective Meza then began an interview of Defendant, which lasted approximately one hour. Detective Jiminez testified Defendant did not appear to be under the influence of any substances. (TR. 9, 11; Ex. 1). Detective Meza questioned Defendant about what he did the previous weekend. Generally, Defendant's answers were vague, and/or he denied any wrongdoing, or he stated he did not know or remember what he did or where he was over the weekend. When Detective Meza asked Defendant if he would be willing to consent to give them a sample of his DNA to help "clear his name," Defendant replied, "maybe once I speak with my lawyer." (Ex. 1 at 46:42-47:01).

The detectives continued their questioning. When Defendant stated he was probably at home at the time the detectives were asking him about, the detectives asked for access to Defendant's security cameras to confirm that; Defendant replied, "I'm not giving you guys access to shit, for one. Anything you get out of me is gonna be with a lawyer." (Ex. 1 at 57:18-57:37). Defendant continued, "This whole conversation right now, there's nothing in this that benefits me. It benefits you guys. All it does is incriminate me. . . . I've been through the system so many fucking times, you guys can't tell me shit right now. . . . I really shouldn't even be talking to you guys without my lawyer," and said he "ain't explaining shit," because "anything I say can and will be used against me, just like you said, right? So I decline to comment on things that are just [inaudible]." (Ex. 1 at 57:37- 59:32). The detectives terminated the interview after summarizing Defendant's statements as, "you don't know, and fuck us, then that's fine . . . if you don't want to tell us what you're doing, what happened, or your side of it, okay. We'll go with you don't remember." (Ex. 1 at 1:00:30-1:00:51).

Defendant now moves to suppress any statements he made during an interview on July 22, 2021, arguing he made them without a knowing, voluntary and/or intelligent waiver of his *Miranda* rights. Defendant also asserts his statements should be suppressed after he invoked his right to counsel. ([Filing No. 56 at p. 1](Filing No. 56 at p. 1)).

## ANALYSIS

*Miranda* warnings are required when an individual has been subjected to a "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). The warnings are necessary "to dispel the compulsion inherent in custodial surroundings." *Id.* at 444. Here, Defendant was advised of his rights under *Miranda*, and the government claims he waived those rights and agreed to speak with the detectives. The government bears the burden of proving by a preponderance of the evidence that Defendant's waiver of *Miranda* rights was an intentional, voluntary, knowing, and intelligent relinquishment or abandonment of a known right or privilege. *United States v. Black Bear*, 422 F.3d 658 (8th Cir. 2005). A waiver is "knowing and intelligent" if it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right. A waiver is "voluntary" if it was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception. *Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir. 2005). The ultimate question is whether the defendant's will to remain silent was overborne and his capacity for self-determination critically impaired. *United States v. Santos-Garcia*, 313 F.3d 1073, 1079 (8th Cir. 2002).

Defendant asserts his "statements were made without a knowing, voluntary, and/or intelligent waiver of his *Miranda* rights." (Filing No. 56 at p. 1). "Whether the waiver was knowing and intelligent is a distinct inquiry from whether it was voluntary; it requires that the waiver was 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *United States v. Smith*, 21 F.4th 510, 517 (8th Cir. 2021).

Here, Detective Meza read Defendant his *Miranda* rights, and Defendant verbalized his understanding of those rights after each one. Defendant then replied, "yeah" when Detective Meza asked Defendant if he wanted to talk to him knowing his rights. Detective Jiminez testified Defendant did not appear to be under the influence of any substances. Defendant then responded to the detective's questions for just under an hour, and his answers show his comprehension of the process and the purpose of the interview. The recording of the interview—in which Defendant clearly understands the questions being posed to him—demonstrates that Defendant understood what was occurring and his understanding of *Miranda* rights. Defendant referred to his knowledge and understanding of *Miranda* throughout the interview, acknowledging he has "been through the system so many fucking times." Defendant refused consent to a DNA swab and to access to his

3

security system, acknowledging both would require detectives to go through his lawyer. Towards the end of the interview, Defendant states he "really shouldn't even be talking to you guys without my lawyer" and said he "ain't explaining shit" because "anything I say can and will be used against me, just like you said, right?" The record clearly establishes Defendant had full awareness of the nature of the rights being abandoned and the consequences of the decision to abandon it; therefore, Defendant's waiver of *Miranda* was knowing and intelligent. See *United States v. Gallardo*, 495 F.3d 982, 990 (8th Cir. 2007).

Defendant also briefly asserts his waiver of *Miranda* was not voluntary. "Although the requirement that a *Miranda* warning be given does not dispense with the voluntariness inquiry, "'[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare.'" *Simmons v. Bowersox*, 235 F.3d 1124, 1132 (8th Cir. 2001) (quoting *Dickerson v. United States*, 530 U.S. 428, 444 (2000)). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Magallon*, 984 F.3d 1263, 1284 (8th Cir. 2021) (quoting *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004)). When determining whether a defendant's will has been overborne, a court examines the totality of the circumstances, "including both the conduct of law enforcement in exerting pressure to confess on the defendant and the defendant's ability to resist that pressure." *Id.* (quoting *United States v. Brave Heart*, 397 F.3d 1035, 1040 (8th Cir. 2005)). Factors a court should consider include "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Id.* (quoting *United States v. Boslau*, 632 F.3d 422, 428 (8th Cir. 2011)).

Here, none of the evidence even slightly suggests that Defendant's statements were involuntary. The interview lasted approximately one hour, and nothing in the audio recording reflects the detectives intimidated, coerced, deceived, or used other pressuring tactics to provoke involuntary statements from Defendant. During the interview, Defendant made it clear he was experienced with law enforcement and recognized his rights to an attorney and to remain silent. Defendant stated his birth year was 1985, making him over 35 years old at the time of the interview. Defendant did not appear to be under the influence of any substances. Defendant was not handcuffed or restrained, and was seated in a small room at a table closest to the door, with only

two detectives seated across from him. The detectives were wearing plainclothes and were not armed. The detectives generally spoke to Defendant in conversational tones. The detectives ultimately terminated the interview shortly after Defendant acknowledged he "ain't explaining shit" because "anything I say can and will be used against me, just like you said, right?" Under the facts presented, Defendant voluntarily waived his *Miranda* rights and agreed to answer the detectives' questions, and his responses provided were voluntary and not the product of an overborne will.

Defendant also asserts questioning should have ceased after his "second request for an attorney." (Filing No. 56 at p. 2). Once a suspect "expresse[s] his desire to deal with the police only through counsel, [the suspect] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the [suspect] himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477 (1981). However, "if a reference is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, *Edwards* does not require that officers stop questioning the suspect." *Davis v. United States*, 512 U.S. 452, 452, (1994). Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991); see also *Davis*, 512 U.S. at 459. The suspect's request for counsel must be unambiguous and articulated "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459.

After careful review of the recording of the interrogation, the undersigned magistrate judge finds Defendant did not make an unambiguous, unequivocal request for counsel to assist in his interrogation. Defendant mentioned a lawyer at various points throughout his interview. First, when Detective Meza asked Defendant if he would be willing to consent to give them a sample of his DNA to help "clear his name," Defendant replied, "maybe once I speak with my lawyer." Defendant also declined to provide the detectives with access to Defendant's security system, stating "Anything you get out of me is gonna be with a lawyer." Finally, towards the end of the

5

interview, Defendant stated, "I really shouldn't even be talking to you guys without my lawyer."[1] These statements are not unequivocal, unconditional statements expressing a "desire for the assistance of an attorney in dealing with *custodial interrogation* by the police." See *McNeil*, 501 U.S. at 178 (emphasis added); see also *United States v. Mohr*, 772 F.3d 1143, 1146 (8th Cir. 2014) (finding the defendant's statement, "I want my lawyer. . . [I]f you want this recorded, I want a lawyer present" was a conditional request for counsel because "a reasonable officer could have understood [the defendant's] statement to mean he was only requesting a lawyer if the interview was going to be recorded," which it was not.); *Connecticut v. Barrett*, 479 U.S. 523, 529 (1987) (finding the defendant's statements that he "would not give a written statement unless his attorney was present" while also stating he would verbally talk about the incident was not an unequivocal or unconditional invocation of counsel). Therefore, suppression of Defendant's statements during the interview is not warranted.

Upon consideration,

**IT IS HEREBY RECOMMENDED** to Brian C. Buescher, United States District Court Judge, that Defendant's Motion to Suppress Statements (Filing No. 55) be denied.

Dated this 16th day of November, 2023.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

**ADMONITION**

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

---

[1] And, the detectives terminated the interview shortly after Defendant made this statement anyway. See Ex. 1 at 57:37-1:00:51.