IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>DENNIS EUGENE SMITH,<br>Defendant. | **8:22-CR-117**<br><br>**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255** |

This matter is before the Court on petitioner Dennis Eugene Smith's *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Filing 145. On September 18, 2024, the Court sentenced Smith to a term of 420 months of incarceration after he pleaded guilty to sex trafficking of a child less than the age of 14. Filing 119 (text minute entry); Filing 123 (Judgment). Smith then timely filed the motion before the Court, asserting four identical grounds for relief. Filing 148 (Motion) (asserting "Ineffective Assistance of Counsel" with no further explanation or factual support in each of the form's four spaces). However, Smith also filed a "memorandum brief" in support of his motion, which sets forth dozens of individually titled paragraphs. Filing 146. The Court construed the brief as part of the § 2255 motion in the Court's Order on Initial Review. Filing 148 at 2. The 40 paragraphs asserted in Smith's brief all relate to ineffective assistance of counsel and can be generally sorted into five categories: (1) defense counsel's performance in obtaining and reviewing discovery and investigating the charges against Smith; (2) Smith's guilty plea being involuntary; (3) defense counsel's performance at the sentencing and restitution hearings; (4)

defense counsel having a conflict of interest; and (5) defense counsel's failure to consult Smith for purposes of filing an appeal. *See generally* Filing 146. A few of Smith's grounds cannot be sorted into one of these five categories and are addressed separately. On Initial Review, the Court ordered the Government to respond to Smith's allegations of ineffective assistance of counsel, which the Government has done. Filing 148 at 3; Filing 164 (Government Response). The Government also submitted the Affidavit of Joseph Kuehl with its response.[1] Smith was given 45-days after the Government filed its response to file a reply of his own. Filing 155. Smith never filed a reply. Because Smith has not presented any viable claims for habeas relief, his motion is denied and no evidentiary hearing is required.

## I. BACKGROUND

In May 2022, the grand jury returned an Indictment charging Smith with four counts of sex trafficking of a child under the age of 14, in violation of 18 U.S.C. § 1591(a) and (b)(1), attempted sex trafficking of a child under the age of 14, in violation of 18 U.S.C. §§ 1594(a) and 1591(b)(1), two counts of enticement, in violation of 18 U.S.C. § 2422(b), attempted sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a) and (e), and transportation of a minor for prostitution in violation of 18 U.S.C. § 2423(a). Filing 1. The Indictment also contained a forfeiture allegation. Filing 1. At 4–5.

Smith appeared before then-United States Magistrate Judge Susan M. Bazis for an initial appearance on the Indictment on August 8, 2022. Filing 11. Judge Bazis ordered discovery provided for in Rule 16 of the Federal Rules of Criminal Procedure by August 15, 2022. Filing 13 at 1. On August 9, 2022, the Government filed an unopposed Motion for Protective Order regarding the

[1] Smith retained Lefler, Kuehl, and Burns Law Firm for representation in the underlying matter. Kuehl maintained representation of the Smith throughout the underlying matter and is the only attorney identified in Smith's brief.

discovery materials in the case, Filing 14, and the Court granted the Protective Order that same day, Filing 15 (saying the "Defense counsel may review those materials with the Defendant, but the Defendant may not retain a copy of the materials"). The Government provided its initial disclosure of discovery materials on August 15, 2022. Filing 18.

On June 10, 2024, the grand jury returned a Superseding Indictment, Filing 95, charging Smith with the same charges alleged in the Indictment. That is, Smith was charged with four counts of sex trafficking of a child under the age of 14, in violation of 18 U.S.C. § 1591(a) and (b)(1), attempted sex trafficking of a child under the age of 14, in violation of 18 U.S.C. §§ 1594(a) and 1591(b)(1), two counts of enticement, in violation of 18 U.S.C. § 2422(b), attempted exploitation of a child in violation of 18 U.S.C. § 2251(a) and (e), and transportation of a minor for prostitution, in violation of 18 U.S.C. § 2423(a). Filing 95. The Superseding Indictment removed the forfeiture allegation. Filing 95.

Smith filed a Petition to Enter a Plea of Guilty as to Count I of the Superseding Indictment, sex trafficking of a child under the age of 14, on June 12, 2024. Filing 100. Smith appeared before Magistrate Judge Jacqueline M. DeLuca on June 12, 2024, for a change of plea hearing. Filing 102 (text minute entry). At the hearing, Smith withdrew his plea of not guilty as to Count I of the Superseding Indictment and pleaded guilty as to that count. Filing 102 (text minute entry). Judge DeLuca issued a Findings and Recommendation on the change of plea, Filing 105, and the Court adopted the Findings and Recommendation and accepted Smith's guilty plea on June 27, 2024. Filing 107. The Court deferred acceptance of the parties' Rule 11(c)(1)(C) plea agreement. Filing 107.

Smith appeared before the Court for sentencing on September 18, 2024. Filing 119. The Court accepted the parties' Rule 11(c)(1)(C) plea agreement which *inter alia* provided that "the

defendant shall receive a sentence of no less than 240 months and no more than 420 months imprisonment." Filing 101; Filing 119 (text minute entry). The Court sentenced Smith to 420 months of imprisonment. At sentencing, the Government requested a separate restitution hearing under 18 U.S.C. § 3664(d)(5) to gather additional information relating to the victims' losses. Filing 161 at 20 (Sentencing Transcript). Defense counsel stated on the record that there was no objection to a separate restitution hearing. Filing 161 at 20. On February 26, 2025, Smith appeared before the Court for a restitution hearing. Filing 142 (text minute entry). The Court issued an Order on Restitution, Filing 143, and an Amended Order on Restitution, Filing 144, ordering Smith to pay restitution to five minor victims in amounts ranging from $92,500 to $99,809.77. Filing 144.

On September 22, 2025, Smith filed a § 2255 Motion, a brief in support of the motion, and an affidavit.[2] Filing 145; Filing 146; Filing 147. As noted above, Smith listed four identical grounds for relief based on "Ineffective Assistance of Counsel." Filing 145 (reduced from all capitals). In the motion, Smith cites no facts or caselaw but refers to his brief to support each claim. Filing 145 (saying "SEE ATTACHED MEMORANDUM" with respect to each claim). Smith's brief contains 40 paragraphs, all relating to ineffective assistance of counsel that can generally be sorted into five different categories. *See generally* Filing 146. The first ground concerns defense counsel's performance in obtaining and reviewing discovery and investigating the charges against Smith. *See* Filing 146 (paragraphs A, B, E, G, I, J, L, M, X, A-B, and A-N falling into this category). The second ground asserts that defense counsel's performance resulted in an involuntary guilty plea. *See* Filing 146 (paragraphs N, O, P, Q, R, T, U, V, W, Y, Z, and AA falling into this category). The third ground relates to Smith's sentencing and restitution hearings. *See* Filing 146 (paragraphs C, D, F,

[2] The affidavit is substantially identical to the supporting brief.

H, A-G, A-H, A-I, and A-K falling into this category). The fourth ground concerns a purported conflict of interest. *See* Filing 146 (paragraphs A-F, and A-L falling into this category). The fifth ground is based on defense counsel's failure to consult the petitioner regarding the possibility of appeal. *See* Filing 146 (paragraphs S, A-C, A-J, and A-M falling into this category). Finally, a minority of the paragraphs asserted in Smith's brief do not fit neatly into the five categories and will therefore be treated separately. Filing 146 (paragraphs K, A-B, A-D, A-E falling into this category). The Government filed its response on May 29, 2026, Filing 164, and Smith never filed a reply.

## II. ANALYSIS

### A. Applicable Standards

Smith brings his motion pursuant to 28 U.S.C. § 2255, which permits federal prisoners to ask the sentencing court to "vacate, set aside, or correct" a sentence upon a showing that "the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). "Section 2255 is an outgrowth of the historic habeas corpus powers of the federal courts as applied to the special case of federal prisoners." *Jones v. Hendrix*, 599 U.S. 465, 472 (2023); *see also Odie v. United States*, 42 F.4th 940, 944 (8th Cir. 2022) ("Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." (internal quotation marks and citations omitted)). Relief under 28 U.S.C. § 2255 is limited, as it "does not encompass all claimed errors in conviction and sentencing." *Meirovitz v. United States*, 688 F.3d 369, 370 (8th Cir. 2012). "A § 2255 motion can be dismissed without a hearing if '(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of

fact.'" *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1105 (8th Cir. 2011) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003)). Put differently, "[n]o hearing is required . . . where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Franco v. United States*, 762 F.3d 761, 763 (8th Cir. 2014) (internal quotation marks and citations omitted).

All of Smith's claims turn on allegations of ineffective assistance of counsel. Under the Supreme Court's test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), courts consider "whether counsel's performance was deficient, and if so, whether prejudice resulted." *United States v. Harris*, 83 F.4th 1093, 1097 (8th Cir. 2023) (internal quotation marks and citation omitted). "Deficient performance is that which falls below the range of competence demanded of attorneys in criminal cases." *O'Neil v. United States*, 966 F.3d 764, 770 (8th Cir. 2020) (quoting *Bass v. United States*, 655 F.3d 758, 760 (8th Cir. 2011)). "Only a performance 'outside the wide range of reasonable professional assistance' is constitutionally deficient." *Id.* at 771 (quoting *Love v. United States*, 949 F.3d 406, 410 (8th Cir. 2020)). To demonstrate prejudice, "a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Paulson v. Newton Corr. Facility, Warden*, 773 F.3d 901, 904 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 694). "The likelihood of a different outcome . . . 'must be substantial, not just conceivable.'" *Donelson v. Steele*, 16 F.4th 559, 570 (8th Cir. 2021) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). "Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011).

### B. Smith's Claims

*1. Ground One: Defense Counsel's Performance in Obtaining and Reviewing Discovery and Investigating Charges Against Smith*

The first general ground for relief concerns ineffective assistance of counsel in obtaining and reviewing discovery and investigating the charges against Smith. *See* Filing 146 (paragraphs A, B, E, G, I, J, L, M, X, A-B, and A-N falling into this ground). The paragraphs asserted in support of this general ground are not clearly organized, as they appear sporadically across the brief, and are filled with conclusory assertions often made without any citation to law or attempt at legal analysis. *See generally* Filing 146. Additionally, although it appears Smith intended to allege a distinct ground for relief under each paragraph, many of the paragraphs do not sustain a focus on a discrete issue and substantially overlap with other paragraphs. *See generally* Filing 146. Nonetheless, the Court has construed Smith to take particular issue with Kuehl failing to obtain discovery or receiving "scrambled" discovery, failing to commit sufficient time to investigate and review the case, failing to procure possible evidence and hire an investigator, failing to adequately prepare Smith for trial, and receiving "false or misleading" "discovery material" resulting in Smith's conviction in spite of his innocence. *See* Filing 146 at 1–7.

The claims raised in Smith's first ground for relief fail for two primary reasons. The first problem with Smith's claims is that he has not alleged "errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Holder v. United States*, 721 F.3d 979, 987 (8th Cir. 2013). Under *Strickland*, "an attorney must conduct more than a cursory investigation." *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013); *see Strickland*, 466 U.S. at 691 ("In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). "[S]trategic choices made

after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Smith's conclusory assertions spread across the paragraphs relevant to this first ground are contradicted by evidence in the record demonstrating that Kuehl's investigation was more than a cursory investigation. *Franco v. United States*, 762 F.3d 761, 763 (8th Cir. 2014) (saying "[n]o hearing is required . . . where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based") (internal quotation marks and citations omitted)). The Government made its initial discovery disclosure on August 15, 2022, and Kuehl continued receiving discovery throughout the case. Filing 18; *see* Filing 164-1 at 2. Smith acknowledges reviewing discovery with his attorney and describes reviewing surveillance footage, witness statements, and statements from the minor victims. Filing 146 at 1–3. Kuehl's affidavit also explains that he and his staff reviewed discovery with Smith. Filing 164-1 at 1–2. Smith, himself, refers to the immense amount of material investigated and obtained by his attorney. Filing 146 at 1 (saying defense received "hundreds of thousands of text messages from multiple phone downloads").

While most of Smith's grievances are generalized and conclusory assertions that he did not receive or review discovery to his satisfaction, Smith makes a few passing references to the sort of evidence he wanted to receive or review. For instance, Smith alleges that Kuehl failed to obtain "[a]lleged victim Atenea's video interview" and complains of "[h]otel camera footage." Filing 146 at 1. However, Smith fails to provide any factual description as to how Kuehl performed unreasonably with respect to obtaining or investigating a possible video interview or hotel camera footage. Filing 146 at 1. As to Smith's complaints regarding "scrambled" and "undecipherable" discovery, Smith nowhere provides facts as to why Kuehl's response to receiving such evidence was unreasonable. Filing 146 at 1. In fact, the record shows that defense counsel hired "Shawn

Kassal, a computer expert, to comb through the discovery and to put it into some order that was easier to read and digest" and that "Kassal performed this service." Filing 164-1 at 2 (¶ 9); Filing 146 at 2. Smith also asserts that his counsel failed to effectively represent him by not hiring a private investigator, but Smith nowhere explains what material evidence a private investigator could have obtained that was not already available to him or why Kuehl's investigation into the case was "unreasonable" by not hiring one. Filing 146 at 2–3. Nowhere does Smith adequately allege "errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Holder*, 721 F.3d at 987.

Smith's general grievances about his attorney's investigation and performance also contradict his Petition to Enter a Plea of Guilty, his change of plea hearing, and his sentencing hearing. *See generally* Filing 100; Filing 108; Filing 161. Among other things, the petitioner stated that he had enough time to speak with his attorney, that he told his attorney everything about his case, and that he was satisfied with the job his attorney had done for him. Filing 100 at 1. Smith indicated that he had no objection to the way his attorney represented him. Filing 100 at 2. Under oath, Smith acknowledged that discovery had produced a factual background sufficient to prove beyond a reasonable doubt the charge in the Superseding Indictment that he pleaded guilty to. Filing 108 at 25–27; *see also* Filing 100 at 7; Filing 101 at 2. Smith has not alleged the discovery of any new evidence between his sentencing and restitution hearings and the filing of his § 2255 motion. Instead, what appears to have motivated the petitioner to pursue this motion is the outcome of his proceedings. That is, defense counsel procured a Rule 11(c)(1)(C) plea agreement—to Smith's great benefit given his guidelines were 360 months to life—that required the Court to impose a term of imprisonment of no less than 240 months and no more than 420 months. Filing 101 at 3. The Court accepted the agreement—sentencing Smith to 420 months of incarceration—which Smith now

complains was more than he was expecting.[3] Filing 146 at 3–4 (saying Smith had a "false hope of getting the low end"). Smith fails to adequately allege "errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Holder*, 721 F.3d at 987.

Smith's claims also fail for a second reason. That is, even if Smith met his burden to show that his counsel's performance was deficient, Smith has not shown that he was prejudiced without contradicting the record. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Covington v. United States*, 739 F.3d 1087, 1090 (8th Cir. 2014) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The Court inquires into Smith's second category of claims—that his guilty plea was involuntary based on Kuehl's ineffective assistance—more fully below. Here, it is sufficient to state that "'[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.'" *Thompson v. United States*, 872 F.3d 560, 567 (8th Cir. 2017) (quoting *Lee v. United States*, 582 U.S. 357, 369 (2017)). Smith has only provided *post hoc* assertions here. The Court asked Smith numerous questions about his guilty plea and plea agreement, ensured that Smith understood the charge he intended to plead guilty to, the penalties he faced, and the constitutional rights he would give up by pleading guilty. *See generally* Filing 108. Having been given this and other information over the course of various court proceedings, Smith freely and voluntarily pleaded guilty to Count I of the Superseding Indictment. Filing 108 at 24–26.

[3] The defendant informed the Court on more than one occasion that he understood he could be sentenced within the plea agreement's range of 240 to 420 months and that he freely and voluntarily wished to plead guilty pursuant to the agreement *See, e.g.*, Filing 100 at 3, 6; Filing 108.

The Eighth Circuit has explained that "[a] defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Thompson*, 872 F.3d at 560 (internal quotation marks omitted) (quoting *Nguyen v. United States*, 114 F.3d 669, 703 (8th Cir. 1997)). All of the contemporaneous evidence shows that it was Smith's desire to plead guilty and that he did not experience prejudice. *Covington*, 739 F.3d at 1090. Smith's first ground fails.

2. *Ground Two: Smith's Guilty Plea Being Involuntary Based on Ineffective Assistance of Counsel*

Smith's second ground for relief is that his guilty plea was involuntary because of his counsel's ineffective assistance. *See* Filing 146 (grounds N, O, P, Q, R, T, U, V, W, Y, Z, and AA falling into this category). Like those paragraphs addressed above, the paragraphs that form the basis for this second general ground are alleged generally and unclearly and often have no accompanying legal citation or analysis. The petitioner's allegations do not show involuntariness in accepting the favorable Rule 11(c)(1)(C) plea agreement as much as they show that he was disappointed that he was sentenced at the high-end of the agreed upon range. *See* Filing 146 at 3. The defendant avers *inter alia* that his defense counsel provided him with an "illusionary plea agreement" because it was not actually realistic that he would receive a sentence at the low-end of the Rule 11(c)(1)(C) plea agreement. Filing 146 at 4. Smith also generally asserts, for example, that his counsel "talk[ed] [him] into taking a plea when [he] wanted to withdraw [his] guilty plea," that he felt "backed into a corner" because he was told he "would die in prison," and because no private investigator was hired. Filing 146 at 2–5.

All of Smith's assertions are contradicted by the record, and Smith has not sufficiently alleged that "there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial." *Meza-Lopez*, 929 F.3d at 1044. As explained above, "'[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.'" *Thompson*, 872 F.3d at 567 (quoting *Lee*, 582 U.S. at 369). Put simply, all of the contemporaneous evidence indicates that it was Smith's expressed preference to plead guilty pursuant to the favorable Rule 11(c)(1)(C) plea agreement. Smith explained to the Court that he had enough time to speak with his attorney, that he was satisfied with the job his attorney did for him, that he had no objections to the way his attorney represented him, and that the plea of guilty was voluntary and supported by a factual basis. Filing 100 at 1–2; *see, e.g.*, Filing 108 at 19, 24–26 (saying he did not "have any complaints or objections concerning the manner in which [counsel] represented [him] in this matter"). At his Change of Plea hearing, Smith was given his constitutional rights, and Smith freely and voluntarily waived those rights under oath. Filing 108 at 19–23 (saying also that he discussed possible defenses with Kuehl). Smith informed the Court that he was "freely and voluntarily pleading guilty" after being informed of the penalties associated with the count of the Superseding Indictment that he was pleading guilty to. Filing 108 at 24. *Thompson*, 872 F.3d at 560 (saying "[a] defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." (internal quotation marks omitted) (quoting *Nguyen*, 114 F.3d at 703)).

There is no indication in the record that Smith's guilty plea was coerced. Instead, based on the descriptions provided by Smith, Kuehl provided candid advice given the immense amount of evidence the Government would have marshaled against him at trial. *See, e.g.*, Filing 121 at 9–13. It was explained to Smith on more than one occasion that, under the terms of the plea agreement, he

could be sentenced to "no less than 240 months and no more than 420 months imprisonment" and ordered to pay restitution. Filing 108 at 11, 14 (the Court saying "the plea agreement that you signed allows Judge Buescher to order you to pay restitution in an amount to be determined to Minor Victims 1 through 5 even though counts including Minors 2 through 5 will ultimately be dismissed by the government if the plea agreement is accepted" and Smith saying that he understood); Filing 101 at 3–7. Smith explained to the Court that he understood this. Filing 108 at 15. The fact that Smith has come to regret his decision to plead guilty pursuant to the plea agreement does not provide a basis for finding his guilty plea involuntarily made. *Franco*, 762 F.3d at 763. Smith has not adequately alleged that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59. Smith's second general ground for relief is contradicted by the record and therefore fails. *Franco*, 762 F.3d at 763 (saying "[n]o hearing is required . . . where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based").

3. *Ground Three: Defense Counsel's Performance at the Sentencing and Restitution Hearings*

The third ground alleges ineffective assistance of counsel during Smith's sentencing and restitution hearings. *See* Filing 146 (grounds C, D, F, H, A-G, A-H, A-I, and A-K falling into this category). Although it is, again, difficult to discern the true nature of Smith's varied grievances, it appears that the Smith generally asserts that his counsel was ineffective by failing to secure a more favorable sentence, permitting the restitution portion of the sentencing hearing to be continued, allowing certain information to be disclosed for purposes of assessing a fine and/or restitution, failing to adequately defend the letter that he submitted to the Court, failing to procure letters and/or people to "say anything good about [him]," failing "to aid or speak on [his] behalf at sentencing,"

and by failing to object to the Court apprising the Government that the restitution paperwork provided at the sentencing hearing was inadequate to order restitution. *See* Filing 146.

The petitioner's third general ground for relief fails because his grievances are either contradicted by the record, conclusory, or, if accepted as true, would not entitle him to relief. *Tinajero-Ortiz*, 635 F.3d at 1105. The first *Strickland* prong requires Smith to allege "errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Holder*, 721 F.3d at 987. Smith has failed to do this here. The record contradicts Smith's assertion that his counsel's ineffective assistance caused him to receive the sentence that he ultimately received. This is so because Smith's counsel could not have performed ineffectively by securing a sentence within the range contemplated by the plea agreement that Smith freely and voluntarily asked the Court to accept. Filing 108 at 3, 10–19; Filing 101. Smith also complains that his counsel failed to get character letters or testimony and that "[c]ounsel failed to aid or speak on [his] behalf at sentencing." Filing 146 at 6. However, Smith does not assert what individuals might have been inclined to submit letters supporting him or what they might say, and the record shows that defense counsel provided a lengthy allocution defending Smith's interests. Filing 146; Filing 161 at 12–15. No evidence suggests that Smith was sentenced to a term at the top-end of plea agreement's scope because of defense counsel's failure to speak on his behalf but because this offense was Smith's third federal conviction, occurred while he was serving a term of supervised release for a previous conviction, and because Smith had shown a "profound lack of respect for the law." Filing 161 at 21.

A substantial share of the grievances asserted by Smith have to do with the letter he submitted to the Court. In this letter, Smith blamed his conduct on the minor victims and his "rocky relationship" with his girlfriend. *See* Filing 146 at 3–7. Smith specifically avers that his counsel acted ineffectively by neglecting the letter during allocution and by apologizing to the Court. *See*

Filing 146 at 6. The record clearly refutes Smith's position that he received ineffective assistance based on Kuehl's failure to properly handle the letter. Defense counsel attempted to mitigate the adverse impact the letter could have on sentencing and even attempted to use the letter to Smith's advantage; treating the letter any other way would have imperiled Smith's arguments before the Court, as Smith used the letter to blame victims and direct the Court's attention to his criminal history. Filing 118; Filing 161 at 13–15.

The petitioner also complains that his counsel was ineffective because he "[r]eceived a four level enhancement for relevant conduct." Filing 146 at 2. However, Smith was not assessed a four-level enhancement, and, even if he had been, Smith identifies no non-conclusory reason as to why that unidentified enhancement should not have been applied. Filing 121 at 14–18; Filing 146 at 2.

The grievances Smith advances as to the restitution hearing are unclear, but it appears that Smith asserts that his counsel was ineffective because the restitution-portion of the sentencing hearing was continued to a later date. At sentencing, the Government requested that the Court schedule a separate restitution hearing pursuant to 18 U.S.C. § 3664(d)(5), and Kuehl stated that he had no objection to a separate restitution hearing. Filing 161 at 20–21. The Court scheduled a separate restitution hearing under the statute and asked the Government to make "any additional filings so it's easier for the Court to follow what's requested and – what documentation is supporting." Filing 161 at 20–21. Section 3664(d)(5) states that "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5). The Government informed the Court pursuant to the statute. Filing 116. A separate restitution hearing was therefore called for under the law, and defense counsel did not err in permitting such a hearing.

Smith also appears to assert that restitution should have been determined at the sentencing hearing because the Government had submitted inadequate support for restitution. Filing 146 at 6. In addition to the fact that the statute is meant to extend more time to ascertain the amount of loss, the record nowhere supports Smith's contention that the Government's "restitution paperwork" "wasn't good enough to get restitution." Filing 146 at 6; Filing 161 at 21 (saying instead that the United States was asked to "do any additional filings so it's easier for the Court to follow what's requested and what – what documentation is supporting").

Put simply, Smith has failed to allege nonconclusory, uncontradicted facts showing his counsel committed "errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Holder*, 721 F.3d at 987. Even if he had, Smith has also failed to allege prejudice with respect to this third ground. *Donelson*, 16 F.4th at 570 ("The likelihood of a different outcome . . . 'must be substantial, not just conceivable.'" (citation omitted)).

*4. Ground Four: Ineffective Assistance of Counsel Based on Conflict of Interest*

The fourth ground alleges ineffective assistance of counsel based on an alleged conflict of interest. *See* Filing 146 (grounds A-F and A-L falling into this category). Specifically, Smith avers,

> I found out after the fact that Counsel Joseph Kuehl's brother Cory Kuehl was a confidential informant on my prior conviction for conspiracy to distribute marijuana and that Counsel was his lawyer for those interviews and statements that he made against me. Counsel never told me about this and I found out after the fact.

Filing 146 at 6. Smith provides no other information as to this purported conflict.[4]

---

[4] Kuehl states in his affidavit,

> While I was meeting with the Defendant at the Douglas County Jail, very early on in this case, the Defendant mentioned to me that he knew my brother. I acknowledged that statement. The entire conversation took less than one minute and we never spoke of my brother again. I have never spoken to my brother about the Defendant and my brother has never once mentioned the name of the Defendant to me. The only time that I have ever spoken to my brother about the Defendant was on the evening of April 9, 2026 when I called my brother to inquire about his knowledge of the Defendant

Ordinarily, an ineffective assistance of counsel claim requires the defendant to show that counsel's performance was deficient and that the defendant experienced prejudice. *Covey v. United States*, 377 F.3d 903, 906 (8th Cir. 2004). However, in *Cuyler v. Sullivan*, the United States Supreme Court explained prejudice is presumed where a defendant "who raised no objection at trial can show 'an actual conflict of interest [that] adversely affected his lawyer's performance." *Id.* at 906–07 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 343 (1980) for the proposition that prejudice is presumed). The Supreme Court has also "made clear," however, that it has not extended the *Cuyler* presumption of prejudice to "conflicts other than those arising from joint representation at trial." *Id.* (*Mickens v. Taylor*, 535 U.S. 162, 174–75 (2002)). "[I]t is unclear" whether the Eighth Circuit presumes prejudice beyond those "conflicts involving multiple or serial representation." *Id.*; *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003).

Assuming *Cuyler* applies to this case, Smith must "demonstrate that the conflict adversely affected his lawyer's performance." *Id.* at 908. "To demonstrate adverse effect, [Smith] must identify 'some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one.'" *Id.* (quoting *United States v. Flynn*, 87 F.3d 996, 1001 (8th Cir. 1996)). "'Effect on representation' mean[s] that the conflict caused the attorney's choice, not that the choice was prejudicial in any other way." *Id.* (quoting *McFarland v. Yukins*, 356 F.3d 688, 705 (6th Cir. 2004)). Assuming *Cuyler* applies, Smith's claim fails because Smith nowhere asserts that any of the circumstances relating to defense counsel's brother caused Kuehl to make any decision or alter any

---

> after reviewing the filing by the Defendant. My brother told me that he knows the name of the Defendant, but that he has never met the Defendant, he has never spoken with the Defendant, and he has never had any knowledge about the Defendant to pass onto law enforcement. This allegation from the Defendant is false.

Filing 164-1 at 4–5 (¶ 16).

decision over the course of representation. Filing 146 at 6. Kuehl nowhere alleges that the relationship had any impact on the representation. *See generally* Filing 146 at 6. Assuming *Cuyler* applies, the claim fails because Smith has failed to allege the purported conflict adversely affected Kuehl's performance. *Covey*, 377 F.3d at 908. Assuming the otherwise applicable *Strickland* standards apply, the claim fails because Smith offers nothing to show that he was in any way prejudiced at any point in the representation. *Strickland*, 466 U.S. at 487 (saying the defendant must show prejudice).

Smith also contends that "counsels [sic] failure to raise his own ineffectiveness created a conflict of interest." Filing 146 at 6. Smith asserts, "Counsel knew that he did not do his job and still proceeded with the case instead of withdrawing like he should have or did the job that he was supposed to do." Filing 146 at 6. Smith must "show that counsel's performance was deficient." *Covey*, 377 F.3d at 906. However, Smith provides no nonconclusory conduct that his defense counsel was unconstitutionally deficient for failing to withdraw because of "his own ineffectiveness." Filing 146 at 6; *Harris*, 83 F.4th at 1097. Smith similarly fails to allege any nonconclusory facts showing that he was prejudiced. *Paulson*, 773 F.3d at 904' *Tinajero-Ortiz*, 635 F.3d at 1105 (saying "[a] § 2255 motion can be dismissed without a hearing if . . . (2) the allegations cannot be accepted as true because they are . . . conclusions rather than statements of fact.'" (quoting *Sanders*, 341 F.3d 722)).

*5. Ground Five: Ineffective Assistance of Counsel Based on Failure to Consult About Appeal*

The fifth ground asserts ineffective assistance of counsel on the basis that counsel failed to appeal the matter. *See* Filing 146 (grounds S, A-C, A-J, and A-M falling into this category). Smith never asserts that he instructed his counsel to appeal the matter. *See generally* Filing 146. Instead,

Smith complains that his counsel failed to consult with him after his hearings concluded. Filing 146 at 4. Smith asserts, "I wanted to appeal the decision but Counsel never came to the jail to see me to file the appeal and I was shipped out to prison where I wasn't able to contact him because I was locked down for months." Filing 146 at 4. Elsewhere, Smith asserts that "Counsel failed to file an appeal or consult with me about filing an appeal until after it was too late to file." Filing 146 at 6.

"[W]hen an attorney disregards specific instructions from a defendant to file a notice of appeal, he acts in a manner that is professionally unreasonable." *Dressen*, 28 F.4th at 928 (cleaned up). "In such a case, prejudice is presumed because the defendant has forfeited his right to an appellate proceeding as a result of his counsel's error." *Id.* (cleaned up). "In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, [the Supreme Court] believe[s] the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). The Supreme Court "employ[s] the term 'consult' to convey a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* "If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* The Supreme Court has held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts

must take into account all the information counsel knew or should have known." *Id.* at 480 (citation omitted). The Supreme Court has also explained,

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Flores-Ortega*, 528 U.S. at 480.

Nowhere in Smith's brief does Smith assert that he instructed Kuehl to appeal the matter.[5] *See generally* Filing 146. Rather, Smith appears to contend that he wanted to appeal the matter but was never able to consult with Kuehl regarding the appeal. *See, e.g.*, Filing 146 at 4. The relevant question is whether, accepting Smith's allegations as true, he would be entitled to relief on the ground that he had his Sixth Amendment right to counsel violated by Kuehl's failure to consult. *Tinajero-Ortiz*, 635 F.3d at 1105. Whether Smith received ineffective assistance of counsel depends on whether Kuehl failed to consult with Smith such that counsel's performance was deficient. As a matter of law, Smith fails to make this showing.

The Supreme Court has made clear that failure to consult does not *per se* show deficient performance. *Flores-Ortega*, 528 U.S. at 479 ("We cannot say, as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily

[5] Kuehl's affidavit states *inter alia* that "[a]fter the sentencing and restitution hearing, the Defendant and I did discuss his ability to appeal." Filing 164-1 at 5. The affidavit further states that "[w]e did discuss what appeal options he may have with [the restitution] order and the sentencing order, but, ultimately, the Defendant stated he did not care about the restitution order and that the victims would only get about $20 a month from him through his prison job since nothing he 'owned' beforehand was in his name. The defendant never instructed me to appeal any order." Filing 164 at 6.

unreasonable, and therefore deficient."). Failure to consult constitutes deficient performance when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480 (citation omitted). First, Smith nowhere alleges why a rational defendant would want to appeal and does not assert any nonfrivolous grounds for appeal that would have been available to him. *See generally* Filing 146. Second, Smith does not allege that he reasonably demonstrated to counsel that he was interested in appealing. *See generally* Filing 146. The record supports these conclusions. Although the Supreme Court has explained a totality of the circumstances is to be applied, the Court first consults several of the factors the Supreme Court singled out as most important. *Id.* at 480. In this case, Smith pleaded guilty. *Id.* (saying pleading guilty signals that the defendant seeks to end proceedings). More importantly, Smith's plea was pursuant to a bargained-for Rule 11(c)(1)(C) plea agreement that significantly limited his appeal rights. *Id.* (saying the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights); Filing 101 at 7–8 (saying "defendant hereby knowingly and expressly waives any and all rights to appeal"); Filing 108 (Smith saying under oath that he understood that, under the plea agreement, he would waive his right to appeal). As explained elsewhere, the Rule 11(c)(1)(C) agreement was a favorable outcome for Smith, and Smith only ever demonstrated that he desired to be sentenced within the plea agreement's scope. Smith has failed to allege—and the record does not include—any circumstances suggesting that a rational defendant would want to appeal or that Smith "reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. No other circumstances undermine these conclusions. Therefore, even taking Smith's allegations as true, Smith was not provided ineffective assistance by

Kuehl's purported failure to consult with Smith. *Tinajero-Ortiz*, 635 F.3d at 1105. Smith's fifth ground fails.

*6. Miscellaneous Grounds for Relief*

Smith finally alleges certain grounds for relief that do not fit neatly into the Court's five generalized categories. First, Smith advances an ineffective assistance of counsel claim on the ground that there was an insufficient factual basis for the guilty plea. Filing 146 at 3. This assertion is contradicted by the record, and Smith acknowledged several times that his guilty plea was, in fact, supported by a factual basis. *Franco*, 762 F.3d at 763; *see, e.g.*, Filing 101; Filing 108. Second, Smith asserts that Kuehl "told [Smith] to file against him because he did not do a good job on my case at all and that he was sorry." Filing 146 at 5. This assertion too is contradicted by the record in that Smith explained to the Court that he was satisfied by Kuehl's performance and because the record does not contain any factual allegations that could form the basis of an ineffective assistance of counsel claim. *Franco*, 762 F.3d at 763. Next, Smith asserts "Ineffectiveness vs. Strategy Decisions." Filing 146 at 5. Smith does not provide any content, factual or otherwise, to explain what he means by this apparent claim, and the claim therefore fails to state a ground for relief. Filing 146 at 5; *Franco*, 762 F.3d at 763. Lastly, Smith asserts that he was provided ineffective assistance of counsel based on the "totality of counsels [sic] errors." Filing 146 at 6 (reduced from all capitals). Given the Court has found that each of Smith's previous alleged grounds fails, this ground necessarily fails. *Franco*, 762 F.3d at 763; *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006) (saying the Eighth Circuit has "repeatedly recognized 'a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test.'" (quoting *Hall v. Luebbers*, 269 F.3d 685, 692 (8th Cir. 2002)).

None of the 40 paragraphs asserted by Smith have merit. Because the Court has denied Hill's § 2255 motion in full for the reasons stated above, no evidentiary hearing is warranted. *See Franco*, 762 F.3d at 763 ("No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." (internal quotation marks and citation omitted)).

### C. Certificate of Appealability

No appeal may be taken on a § 2255 motion to vacate unless a judge issues a certificate of appealability, which requires the appellant to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)–(2). To make "a substantial showing of the denial of a constitutional right" after the district court denies a constitutional claim on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, a petitioner is entitled to a certificate of appealability if the petitioner "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Reasonable jurists would not find the Court's decisions debatable here. Therefore, the Court will not issue a certificate of appealability.

## III. CONCLUSION

For the reasons stated above, Smith Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, Filing 145, fails. Accordingly,

IT IS ORDERED:

1. Dennis Eugene Smith's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, Filing 145, is denied; and

2. The Court will not issue a certificate of appealability.

Dated this 16th day of November, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge